UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| H&R BLOCK EASTERN ENTERPRISES, INC., et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>INTUIT INC.,<br><br>    Defendant. | Case No. 06-0039-CV-W-SOW |

### INTUIT INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

COMES NOW, Intuit Inc. (hereinafter "Intuit"), by and through counsel, and for its Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, states as follows

### INTRODUCTION

Intuit's challenged TurboTax® advertisement is true. TurboTax® *was* used to prepare more tax returns than were prepared in H&R Block stores, and "just like H&R Block," TurboTax® asks questions of tax preparers to help them complete their tax forms. H&R Block has no evidence to the contrary and presents only unsupported assertions. Based on little more than its say so, the H&R Block Plaintiffs want to prevent Intuit from running this advertisement, which constitutes more than 40% of Intuit's $25 million, national, ten-week marketing campaign for TurboTax®. Their unsupported speculation is not a legally cognizable basis for issuing a preliminary injunction and the Court should reject their attempt to stifle fair competition.

# ARGUMENT

**I. PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION UNDER THE *DATAPHASE* FACTORS**

Under Eighth Circuit precedent, a preliminary injunction may be granted only if the moving party can demonstrate:

(1) that the movant will suffer irreparable harm absent the restraining order;

(2) that the balance of harms favors the movant;

(3) that the public interest favors the movant; and

(4) a likelihood of success on the merits.

*Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987).

### A. THE H&R BLOCK PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

The H&R Block Plaintiffs have the burden of proving that they are likely to prevail on the merits. Thus, if it appears equally likely that either party may win on the merits, the plaintiffs have not carried their burden and the motion must be denied. This burden is particularly heavy when granting the preliminary injunction would in effect give the moving party substantially the relief it would obtain after a trial on the merits. *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (the moving party's burden to demonstrate that a preliminary injunction is warranted is heavier when, as here, granting the preliminary injunction will in effect give the moving party substantially the relief it would obtain after a trial on the merits); *Calvin Klein Cosmetics Corp. v. Lenox Laboratories*, *Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (same); *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993) (court affirmed district court's holding that plaintiff's "heavy" burden had not

been met). Here, granting the Preliminary Injunction would essentially grant the plaintiffs the full measure of relief they seek due to the very limited advertising window for this tax cycle driven product. Under those circumstances, the H&R Block Plaintiffs fall far short of this burden with respect to all of their claims.

### 1. The Challenged Advertisement Is Not False.

To establish a claim under the false or deceptive advertising prong of the Lanham Act, a plaintiff must prove: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." 15 U.S.C. § 1125(a); *United Industries*, 140 F.3d at 1180.

As described below, both challenged statements in Intuit's advertisement are true, and the Plaintiffs cannot adduce contrary evidence that is sufficient to meet the heavy and "complete burden" required for a preliminary injunction. *Dataphase,* 640 F.2d at 113.

> *"More returns were prepared with TurboTax® last year than at all the H&R Block stores."*

Intuit's evidence will show that last year, a minimum of 28.9 million tax returns were prepared using TurboTax®. These returns consist of 20.3 million federal tax returns and an additional nine million state tax returns. According to their own verified Complaint, the total number of tax returns prepared at H&R stores last year was 26 million – a number for which the H&R Block Plaintiffs have thus far failed to produce a single piece of evidence to support. Simple comparison of these numbers, giving the H&R Block Plaintiffs every benefit of the

doubt, proves Intuit's representation in the commercial to be accurate as its figure of 28.9 million returns is greater than the 26 million of H&R Block Stores.

The H&R Block Plaintiffs have mistakenly placed all of their reliance on their allegation that Intuit's number is false on a single document: Intuit's First-Quarter Fiscal 2006 Conference Call Remarks, in which an Intuit employee referred to 21 million returns prepared last year. These conference call remarks, however, were referring to federal tax returns, not **all** tax returns prepared using TurboTax®, which include *both* federal *and* state returns. This is immediately obvious upon review of the First-Quarter Fiscal 2006 filing, which was being commented upon. The filing reflects "Federal TurboTax®" units and the "Total TurboTax® Federal Units."

Plaintiffs' omission of this key piece of information was misleading, particularly when H&R Block's publicly available information routinely refers to 16 million "returns" – not "federal returns" prepared by it. The fact is that it is the custom and practice in the industry that when companies speak about returns, they are usually speaking about federal returns, just as H&R Block did, and just as Intuit's employee did in the conference call remarks. Indeed, when Intuit created its challenged advertisement, it was comfortable with its representation about "more returns" because it knew that under a very conservative assessment at least 20.3 million federal tax returns were prepared with TurboTax®, whereas no more than 16 million were prepared by H&R Block stores. The H&R Block Plaintiffs now contend that when state returns are also counted, its stores have prepared a total of 26 million returns last year, but, as stated above, when state returns are added to the number of federal tax returns prepared with TurboTax®, the number rises to at least 28.9 million, well above the 26 million claimed by Plaintiffs. Accordingly, Intuit's "more returns" representation is true.

Intuit relied on industry-standard figures and surveys in making its claims and in *Rhone-Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrell Dow, Inc.,* 93 F. 3d 511 (8th Cir. 1996), the Court detailed the lenient standard which is to be applied when evaluating such figures. "To ensure vigorous competition and to protect legitimate commercial speech, courts applying this standard should give advertisers a fair amount of leeway, at least in the absence of a clear intent to deceive or substantial consumer confusion." *Id.* at 515.

Intuit's statement regarding the number of returns filed is literally true and there is absolutely no evidence that Intuit intended to deceive customers or that any customer was in fact deceived by the advertisement. Accordingly, Plaintiffs' motion must be denied.

> *"TurboTax® asks me questions just like H&R Block does and then puts the answers in all the right forms."*

The H&R Block Plaintiffs contend that Intuit's statement that "TurboTax® asks me questions just like H&R Block does and then puts the answers in all the right forms" is false because it "implies that pre-programmed prompts from the TurboTax® computer program are 'just like' the interaction with an H&R Block tax professional." Compl. ¶ 30. They also allege that the "personalized customer attention that H&R Block customers enjoy is simply not duplicated by TurboTax's® software." *Id.* This reading of Intuit's advertisement is unfounded. In an attempt to confuse the Court, Plaintiffs inject issues into the commercial which simply do not exist. For example, Plaintiffs claim that the commercial is misleading because an H&R Block professional can "respond to fact specific questions from each consumer." *Id.* Of course, the commercial never makes the claim that TurboTax® offers the same feature. Plaintiffs' strained and contorted interpretation of the advertisement cannot survive scrutiny.

To determine whether an assertion is false, a court must analyze the message conveyed in its full context. *E.g., Avis Rent A Car System, Inc. v. Hertz Corp.*, 782 F.2d 381, 385-86 (2nd

Cir. 1986). The full context of this statement makes clear that what is being compared is the fact of being asked questions that elicit information that is put onto the right tax form. The Plaintiffs cannot dispute that this fact is completely accurate. That this is what is intended by the statement is conveyed by the actual words of the full sentence used in the advertisement itself. This meaning is further confirmed by the accompanying visual: a man demonstrating the TurboTax® software to his wife. Immediately after the statement, a screen shot demonstrates the software placing an income figure into the appropriate form.

Neither the visual context of the advertisement nor its words support Plaintiffs' tortured reading that a consumer will believe that using TurboTax® will be identical to interacting with a live person or that TurboTax's® pre-programmed questions will be identically verbatim questions to those posed by H&R Block's tax preparers. Nor do Plaintiffs have any evidence whatsoever that even a single consumer has been mislead into believing such a thing. Even if one had though, under the circumstances, it would not be reasonable. This is critically important because a mere "'possibility' of confusion cannot support an injunction.'" *August Storck K.G. v. Nabisco, Inc.,* 59 F.3d 616, 619 (7th Cir. 1995). As the court explained in *August Storck*: "Many consumers are ignorant or inattentive, so some are bound to misunderstand no matter how careful a producer is. If such a possibility created a trademark problem, then all comparative references would be forbidden, and consumers as a whole would be worse off." *Id.*

The decision in *LensCrafters, Inc. v. Vision World, Inc.,* 931 F. Supp. 1462 (D. Minn. 1996), is instructive. There, the court rejected the plaintiff's allegation that the defendant's reference to "the comfort of plastic with the durability of glass!" was false. *Id.* at 1468. The court concluded: "The term "durability of glass" does not require that the DURALENS be identical to or surpass glass in terms of durability; it simply connotes the idea that the durability

of the DURALENS and glass be *comparable*." *Id.* Similarly, in *Ellison Educational Equipment v. Tekservices*, Inc., 903 F. Supp. 1350, (D. Neb. 1995), the court rejected the plaintiff's false advertisement claim concerning the defendant's advertisement "that the Accu-Cut system is 'completely compatible with every die cutting system available today'" – even though "[b]y a strict interpretation the Accu-Cut system is not "completely compatible with every Ellison die … [but] the range of incompatibility was limited." *Id.* at 1356-57. Here, the comparable –as opposed to identical – nature of what is being compared (i.e., the fact of asking questions to elicit information to complete tax forms) is even more clearly expressed than in *LensCrafters* and *Ellison* in that Intuit's representation uses the phrase "just like," a common expression to convey some basis of similarity - not complete identity.

Finally, "[t]o enjoin an ad which is implicitly false," as Plaintiffs contend, "a court must conclude that the ad is confusing or deceiving based upon the public reaction." *LensCrafters,* 931 F. Supp. at 1467 (D. Minn. 1996) (denying motion for preliminary injunction). Plaintiffs have failed to come forward with any evidence supporting that a reasonable consumer would be mislead by Intuit's literally true statement concerning the fact that both TurboTax® and H&R Block tax preparers ask questions to elicit data necessary to complete standardized tax return forms. Accordingly, they cannot be found likely to prevail on the merits.

### 2. Intuit's Accurate References to H&R Block Do Not Infringe the H&R Block Trademark.

The First Amendment prohibits enjoining comparative advertising that is truthful. *E.g., U-Haul Int'l v. Jartan, Inc.,* 793 F.2d 1034, 1042 (9th Cir. 1986) (modifying injunction to permit truthful comparative advertising). And a long line of cases establish that a trademark may be used in a truthful manner by someone other than the trademark owner. In 1924 the Supreme Court held that it is "not taboo" to use a trademark in a manner that "tells the truth" and does not

deceive the public. *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924). In that opinion, the Court held that a plaintiff does not have "the naked right alleged to prohibit [a] defendant from making even a collateral reference to the plaintiff's mark." *Id.* at 352. The principle holds true with equal force today. As explained by the Ninth Circuit:

> [W]e may generalize a class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one. Such *nominative use* of a mark – where the only word reasonably available to describe a particular thing is pressed into service – lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder. "When [a] mark is used in a way that does not deceive the public [there is] no such sanctity in the word as to prevent its being used to tell the truth.

*New Kids on the Block v. News America Publishing, Inc.,* 971 F.2d 302, 307-08 (9th Cir. 1992) (quoting *Prestonettes,* 264 U.S. at 368). Likewise, the Eight Circuit has held that a "manufacturer does not commit unfair competition merely because it refers to another's product by name in order to win over customers interested in a lower cost copy of that product if the reference is truthful and does not likely confuse consumers into believing that the copy is from the same source as the original." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd*., 824 F.2d 665, 668 (8th Cir. 1987).

The H&R Block Plaintiffs have failed to identify any way in which Intuit's referential use of the name "H&R Block" will confuse or mislead consumers (other than its allegations of false advertising, as to which, as described above, they cannot satisfy their burden of proof). Nor can Plaintiffs seriously contend that any reasonable consumer viewing the advertisement would believe that H&R Block was the source of the advertisement. And again, Plaintiffs have not come forward with one iota of actual evidence of consumer confusion or likelihood of confusion. *Calvin Klein Cosmetics*, 815 F.2d at 505 (reversing grant of preliminary injunction where,

among other errors, trial court's finding of likelihood of confusion was not based on any evidence other than the court's visual inspection of the packages in question); *United Industries,* 140 F.3d at 1183 (denying preliminary injunction when plaintiff failed to provide "expert testimony, surveys or consumer reaction evidence" to establish likelihood of confusion).

### 3. Plaintiffs Are Unlikely To Prevail On Their State Law Claim.

The elements of Plaintiffs' Missouri common law claim of unfair competition "are identical to the elements of the claim[] asserted under the Lanham Act. *Anheuser-Busch, Inc. v. Balducci Publications,* 814 F.Supp 791, 798 (E.D. Mo. 1993) (reversed on other grounds). For the same reasons discussed above, Plaintiffs are not likely to prevail on this claim

### B. THE PUBLIC INTEREST FAVORS NOT ENJOINING INTUIT'S ADVERTISEMENTS.

The Court must carefully consider the public interest in "encouraging, not stifling, competition" before granting an injunction in a case involving comparative advertising. *Calvin Klein Cosmetics*, 815 F.2d at 505 (reversing grant of preliminary injunction where, among other errors, trial court failed to consider such interests). The Eight Circuit has also recognized "a strong public interest in the consumer's ability to obtain the lowest priced goods." *Id.* Here, it is undisputed that Intuit's TurboTax® software is a lower priced good when compared to the cost of having a tax return prepared at an H&R Block store. Accordingly, the public interest in this action, where the advertisement at issue provides consumers with valuable information comparing products, is particularly strong, and overwhelmingly favors denial of an injunction.

### C. THE H&R BLOCK PLAINTIFFS WILL NOT BE IRREPARABLY HARMED THROUGH DENIAL OF A PRELIMINARY INJUNCTION.

The H&R Block Plaintiffs have not identified any evidence that they will be irreparably harmed if Intuit's advertisement is not enjoined. Rather, they rely simply on legal presumptions that apply if a plaintiff has carried its burden of proving that it is likely to prevail on the merits.

As discussed above, Plaintiffs here cannot satisfy that burden. Therefore, the presumption does not apply. Moreover, Plaintiffs' claims of dire urgency are conveniently timed to cause maximum disruption to Intuit's TurboTax® advertising. On November 18, 2005 Intuit announced in its conference call for investors that "Last year, TurboTax®, with 21 million returns prepared, completed more tax returns than all of H&R Block's stores." Plaintiff clearly had no trouble locating this statement; indeed, they attached it to their complaint. But in the intervening two months since the statement was publicly made, they took no action. Under these circumstances, and given this delay, plaintiffs cannot show irreparable harm.

### D. THE BALANCE OF HARMS FAVORS INTUIT.

As discussed above, the H&R Block Plaintiffs' failure to satisfy their burden of proving likely success on the merits deflates their argument for irreparable injury. Meanwhile, due to the seasonal nature of the tax preparation business, only a limited period exists for sales, and that critical period is right now. Intuit plans to spend only ten weeks this entire year advertising TurboTax® and this seven-week campaign, which H&R Block is seeking to enjoin, is the lion's share of that 10 week period. Further, due to the importance of the challenged advertisement to Intuit's current advertising campaign, Intuit stands to lose over 40% of its $25 million advertising buy for the entire year if a preliminary injunction is granted. This advertisement is calculated not only to increase Intuit's goodwill among its existing customers, but also to recruit new customers who go to any tax store or tax professional -- not just H&R Block. As such, a preliminary injunction at this time will effectively stunt Intuit's ability to compete in the marketplace (not just against H&R Block) for the entire year for TurboTax®, one of its most significant products. Such an extremely anti-competitive injunction is disfavored and weights the balance of hardships heavily in Intuit's favor. *Cf. Calvin Klein Cosmetics*, 815 F.2d at 505 (citing *Societe Comptoir*

*de L'Industrie Etablissements Boussac v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 37 (2d Cir. 1962), for recognition of the fact that "true nature of a trademark infringement action may be an attempt to shield against competition); *see ASICS Corp. v. Target Corp.,* 282 F.Supp.2d 1020, 1031 (D. Minn 2003) (denying preliminary injunction after holding "[t]he strong public interest in the lowest possible prices, avoiding monopolies, and encouraging, not stifling, competition [citations] suggest that an injunction is not in the public interest 'absent a more substantial showing that [plaintiff] has a viable claim'").

Further, in weighing the equities here, it must be taken into account that Intuit's "more tax returns" statement was thought to be true based on H&R's Block's publicly available information that 16 million returns were prepared by its stores. As it turns out, Intuit's total number of returns is even higher than the number H&R Block now alleges (without documentation) is the actual number of returns prepared by its stores. In any event, Intuit's statements were always well-grounded on the information Plaintiffs themselves made publicly available.

## II. THE MERITS OF PLAINTIFFS' MOTION SHOULD NOT EVEN BE HEARD IN THIS COURT, BUT IN THE NORTHERN DISTRICT OF CALIFORNIA

### A. The Eighth Circuit Recognizes the First to File Rule.

The Eighth Circuit adheres to the longstanding rule that "the district court first obtaining jurisdiction over the parties should proceed to adjudicate the controversy and should restrain the parties from proceeding in a later filed action." *Northwest Airlines, Inc. v. American Airlines, Inc.,* 989 F. 2d 1002, 1004 (8th Cir. 1993). "[I]n cases of concurrent jurisdiction, 'the first court in which the jurisdiction attaches has priority to consider the case.'" *Id.* at 1005 (quoting *Orthmann v. Apple River Campground, Inc.,* 765 F. 2d 119, 121 (8th Cir. 1985)). This well-established first to file rule, based upon principles of federal comity, serves to eliminate duplicative litigation, conserve judicial resources and avoid conflicting rulings. *Northwest*, 989

F. 2d at 1006 (citing *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F. 2d 487, 488 (8th Cir. 1990)). Accordingly, "[i]n the absence of compelling circumstances, the first-filed rule should apply." *Id.* at 1005 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F. 2d 1169, 1174 (11th. Cir. 1982)).

> B. **Because There Is Already a Parallel Action Pending in California District Court, The First to File Rule Applies and This Court Should Decline Jurisdiction.**

In *Upchurch v. Piper Aircraft Corp.,* 736 F. 2d 439, 440 (8th Cir. 1984), the Court held that "[t]here is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Permitting Plaintiffs to proceed in this forum would result in precisely the type of duplicative and potentially conflicting litigation that the first to file rule is designed to prevent and there are no compelling circumstances in this case which warrant an exception to the rule.

On January 9, 2006, Intuit began airing the television and radio advertisements now at issue before this Court. On January 11, 2006, counsel for H&R Block sent a letter to Intuit's in-house counsel demanding that Intuit cease and desist the broadcasting of these advertisements. Unable to reach a resolution with H&R Block, and having no other option aside from dismantling a $25 million national advertising campaign booked for a seven week run (out of a total of ten selling weeks for the entire year due to the cyclical nature of the tax preparation business), Intuit filed a complaint in the District Court for the Northern District of California on January 12, 2006 seeking a declaration from the Court that its current advertisement does not violate federal or state advertising laws. Intuit notified Plaintiffs of the filing and advised that if

Plaintiffs wished to seek injunctive relief, they could do so in the District Court where the suit was already pending.[1]

Despite knowledge of this pending lawsuit, Plaintiffs nonetheless chose to seek injunctive relief in this forum, thus creating the very type of duplicative litigation and risk of conflicting rulings rejected by the Court of Appeals in *Northwest*. Moreover, Plaintiffs have not established any justification for their failure to seek injunctive relief in the already pending suit. Any dispute regarding this advertisement should proceed in the Court where litigation was first filed and, accordingly, this Court should decline H&R Block's invitation to breach principles of federal comity.

### C. The California District Court Must Resolve Any Issue of Jurisdiction Before Any Other Court May Proceed with Parallel Litigation.

While Plaintiffs may challenge the validity of the California action, this Court cannot address the merits of the Plaintiffs' complaint or Plaintiffs' demand for a preliminary injunction, until the California District Court has ***first*** resolve issues of jurisdiction. In *Northwest*, the Eighth Circuit Court of Appeals held that "[t]he discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court is firmly established." *Northwest*, 989 F. 2d at 1004 (citing *Minnesota Mining & Mfg. Co. v. Rynne*, 661 F. 2d 722 (8th Cir. 1981)). The Ninth Circuit Courts echo this longstanding rule. *See, e.g. Bryant v. Oxxford Exp., Inc.,* 181 F. Supp. 2d 1045, 1050 (C.D. Cal. 2000) (holding that district court had authority to enjoin parties from pursuing parallel action in New Jersey when plaintiff had first filed action for declaratory relief in California). *See also*

---

[1] Despite serving its original cease and desist letter solely on behalf of H&R Block, Inc. (Exhibit E to Plaintiffs' Complaint), Plaintiffs chose not to name H&R Block, Inc. as a plaintiff in this action and now claim that the two actions are therefore not parallel. The Court should make short shrift of this obvious attempt to avoid application of the first-filed rule.

*Cadle Co. v. Whataburger of Alice, Inc.,* 174 F. 3d 599, 606 (5th Cir. 1999) ("general rule [is that] that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed"); *Hospah Coal Co. v. Chaco Energy Co.,* 673 F. 2d 1161, 1164 (10th Cir. 1982) ("the court which first obtains jurisdiction should be allowed to first decide issues of venue"). Here, the California Court has not even had the opportunity to *address* the issue of jurisdiction.

The first-filed and pending California suit involves the same party interests and the same issues now before this Court and it is axiomatic that this Court cannot adjudicate the jurisdiction of the California Court. As the Eighth Circuit held in *Orthmann*, 765 F. 2d at 121, "the first court in which jurisdiction attaches has priority to consider the case." Accordingly, until such time as the California Court dismisses, transfers or otherwise relinquishes its original jurisdiction over this matter, this Court should not proceed to address the merits of Plaintiffs' complaint and motion.

## CONCLUSION

Plaintiffs are unable to meet their substantial burden of proof on each of the four factors identified by the Eighth Circuit as necessary precursors to obtaining a preliminary injunction. This is because TurboTax® was actually used to prepare more tax returns-- both federal returns and federal and state returns combined-- than at all of the H&R Block stores. Prohibiting Intuit from engaging in truthful comparative advertising would be a violation of Intuit's First Amendment rights.

Additionally, it is undisputed that the first-filed and pending California suit involves the same party interests and precisely the same issues now before this Court. While H&R Block may decide to raise jurisdictional challenges in California and seek a transfer of that action to this district, it is axiomatic that this Court cannot adjudicate the jurisdiction of the California

Court. Rather, the California Court should determine whether the action should proceed in that forum or whether the first-filed action should be transferred to this or another district.

For the foregoing reasons, Intuit respectfully requests that this Court deny Plaintiffs' request for injunctive relief, stay any further action in this Court pending a ruling by the District Court for the Northern District of California on the appropriate forum in which this action should proceed, and enter any such other and further relief as this Court deems just and equitable.

                ARMSTRONG TEASDALE LLP

                By: s/ Edward R. Spalty
                     Edward R. Spalty      #26086
                     Teresa L. Cauwels    #53851
                     Kent J. Lowry        #26564
                     2345 Grand Boulevard, Suite 2000
                     Kansas City, Missouri 64108-2617
                     (816) 221-3420
                     (816) 221-0786 (facsimile)

Of Counsel:

        Claude M. Stern
        Margret Caruso
        Doug Colt
        QUINN EMANUEL URQUHART
        OLIVER & HEDGES, LLP
        555 Twin Dolphin Drive
        Redwood Shores, California
        650-801-5000

ATTORNEYS FOR DEFENDANT INTUIT INC.

**Certificate Of Notification**

      The undersigned certifies that on the 17th day of January, 2006, a copy of the above and foregoing document was hand delivered to the Judge and opposing counsel and filed with the Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

                                                              s/ Edward R. Spalty
                                                  Attorney for Defendant Intuit Inc.