UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

---

H&R Block Eastern Enterprises, Inc. HRB
Royalty, Inc., H&R Block Enterprises, Inc.
and H&R Block and Assoc., L.P.,

                    Plaintiffs,

          -against-

Intuit, Inc.,

                    Defendant.

06-0039-CV-SOW

**ANSWER AND COUNTERCLAIMS**

## ANSWER

      Defendant Intuit Inc. ("Defendant" or "Intuit"), answering the complaint of

plaintiffs (collectively "H&R Block") dated January 13, 2006 (the "Complaint"), pleads and

avers as follows.

      In response to the unnumbered introduction to H&R Block's Complaint, Intuit

denies its material allegations, including the allegations that any statement made in advertising

Intuit's TurboTax® product (1) was false or misleading, (2) infringed on H&R Block's

trademark or (3) constituted unfair competition.  H&R Block's lawsuit primarily arises from its

challenge to the accuracy of Intuit's statement that "more returns were prepared with TurboTax®

last year than at all H&R Block stores."  In satisfying itself of the accuracy of that statement

Intuit relied on statements H&R Block, Inc. and plaintiffs made that H&R Block stores prepared

between 15 and 19 million returns in each of the past five tax years.  The allegations in H&R

Block's Complaint are inconsistent with public representations H&R Block, Inc. has made,

including those in its periodic filings with the United States Securities and Exchange

Commission ("SEC"), its annual reports, and an Investment Community Conference statement that was published only days before H&R Block filed this action.

Through this lawsuit, H&R Block not only seeks to prevent Intuit from relying on H&R Block's publicly published numbers, but also seeks to prevent the public at large from relying on (or even having access to) H&R Block's newly claimed numbers. Only four days after filing the Complaint alleging that H&R Block stores prepared more than 26 million returns last year, H&R Block submitted a document to this Court that purports to reflect figures with the number of tax returns prepared by H&R Block, which were materially different than the numbers of returns recited by H& R Block in the complaint in this action or in its SEC filings. The day after submitting this document to this Court and claiming that the numbers in the document were accurate, H&R Block orally moved this Court to have the document sealed and not subject to public disclosure on the grounds that H&R Block did not want "anybody other than [H&R Block] making a misuse of those numbers [or] indicating that that [new number]'s somehow a representation by us to the public." (Jan. 18, 2006 Hearing Tr. at 13.) In short, in bringing this lawsuit, H&R Block contends that Intuit was wrong to rely on the representations it previously made to the SEC, the investment community, the Federal Courts, and the public at large, but it does not want the public to know the actual number of returns it prepares on an annual basis.

Despite changing figures that H&R Block now presents, the company has repeatedly and publicly stated that H&R Block stores were responsible for between 16 and 19 million returns in each of the past six tax years. Examples of these statements include:

- H&R Block, Inc.'s 2004 Annual Report (filed with the Securities and Exchange Commission and attached in relevant portion hereto as Exhibit A) wherein it

reported that it prepared the following number of returns in H&R Block U.S. retail stores:

> 2004: 15.9 million returns prepared
>
> 2003: 16.3 million returns prepared
>
> 2002: 16.9 million returns prepared
>
> 2001: 16.4 million returns prepared
>
> 2000: 16.3 million returns prepared

- H&R Block, Inc.'s 2005 Annual Report (filed with the Securities and Exchange Commission and attached in relevant portion hereto as Exhibit B) wherein it stated:

> We served 19.1 million clients in the U.S. during fiscal year 2005, compared to 19.3 million in 2004 and 19.5 million in 2003 . . . . Returns for our U.S. clients constituted 15.5% of an IRS estimate of total individual income tax returns filed as of April 29, 2005, compared to 15.7% in 2004 and 16.0% in 2003.

As of April 29, 2005, the IRS estimated that it had received 122,090,000 returns for tax year 2004. H&R Block's reported 15.5% share of those 122,090,000 returns corresponds to 18,923,950 returns filed in tax year 2004 for its U.S. customers. This amount does not specify what subset of those filed returns were prepared by H&R Block.

- H&R Block, Inc.'s publicly available January 10, 2006 "Investment Community Conference" statement (attached in relevant portion hereto as Exhibit C) wherein it reported that it filed 16.0 million "assisted tax returns" in its retail stores in 2005.

• A verified complaint (signed under penalty of perjury and attached hereto as Exhibit D) that H&R Block Eastern Enterprises, Inc. and HRB Royalty, Inc. (two of the same parties in this suit) filed in the United States District Court for the District of New Jersey on February 10, 2005 wherein they alleged "in 2004, H&R Block handled approximately one in every eight tax returns prepared in the United States . . . ." In 2004, the IRS reported that it received a total of 132,200,000 returns. One out of every eight of those 132,200,000 returns translates to 16,525,000 returns reportedly prepared by H&R Block in 2004.

In addition, the Complaint takes issue with Intuit's advertisement's statement that "TurboTax® asks me questions just like H&R Block does; then it puts the answers on all the right forms." H&R Block alleges that the advertisement misleads the public into thinking that the experience of interacting with a computer software program is identical to personal interaction with a human tax preparer. As this Court recognized in a hearing on January 17, 2006, Intuit's statement is true: "They [referring to TurboTax®] do ask questions. They ask questions just like H&R Block does." (Tr. at 92.) Further, Intuit avers that a reasonable consumer has a sufficient understanding of the inherent differences between a computer software program and a human being to understand that the two methods of tax preparation are not identical, despite H&R Block's allegation. Indeed, Intuit has no desire to portray every aspect of the two experiences as comparable. Among other advantages, by using TurboTax®, consumers do not need to bring their tax documents outside of their home or leave their home at all; they can avoid disclosing sensitive personal and financial information to an unknown person; and they avoid the pressures of completing a tax return on someone else's schedule. Consumers

recognize these differences and will understand the advertisement to mean that both TurboTax® and H&R Block tax preparers ask questions in order to fill out a tax return form. Accordingly, the statement that TurboTax® "asks me questions just like H&R Block does; then it puts the answers on all the right forms" is entirely true and not false or misleading to any reasonable consumer.

## THE PARTIES

1.      Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

2.      Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph. Defendant specifically objects to the definition of "H&R Block" throughout the Complaint on the grounds that, at a minimum, the definition (i) invokes H&R Block, Inc., an entity that is not named as a Plaintiff in this action, (ii) potentially includes other non-named plaintiffs, and (iii) does not associate an actual named Plaintiff with a specific allegation.

3.      Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

4.      Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

5.      Admits the allegations of this paragraph for purposes of this lawsuit.

## INTRODUCTION

6.      Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

7.      Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

8.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

9.     Denies the allegations of this paragraph, except that admits that the tax season is the busiest time of the year for tax preparers, and avers that it is also the time of year that individuals who prepare their own taxes using TurboTax® are most likely to purchase software to do so.  Intuit denies the implication that any of its current or recent advertising campaigns feature or depict any of H&R Block's visual trademarks, such as the "green square logo," but admits that certain of Intuit's recent – but not current – advertisements mentioned the name "H&R Block" in the audio soundtrack for the purpose of comparing certain aspects of H&R Block's services to Intuit's products.  Defendant avers that in their own advertisements, one or more H&R Block entities compares H&R Block's services and products to those of other named competitors, including Intuit and its TurboTax® software.  Defendant further denies any implication that it has a "campaign" of advertisements that is limited to or consists entirely of advertisements mentioning H&R Block, and therefore objects to Plaintiffs' use of the defined term "Campaign" throughout the Complaint.

10.     Denies the allegations of this paragraph, except that admits that TurboTax® software is sold in Missouri and other states.

11.     Denies the allegations in this paragraph.

12.     Denies the allegations in this paragraph.

## JURISDICTION AND VENUE

13.     Responds that this paragraph states legal conclusions to which no responsive pleading is required, but avers that jurisdiction in this Court is improper because a separate action arising out of the same facts and circumstances was filed in the District Court for the Northern District of California on January 12, 2006, prior to the filing of this action.

14.     Responds that this paragraph states a legal conclusion to which no responsive pleadings is required, but avers that venue in this District is improper because a separate action arising out of the same facts and circumstances was filed in the District Court for the Northern District of California on January 12, 2006, prior to the filing of this action.

## ALLEGATIONS COMMON TO ALL COUNTS

15.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

16.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

17.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

18.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

19.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

20.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

21.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.  Defendant further responds that this paragraph states legal conclusions to which no responsive pleading is required.

22.     Denies the allegations of this paragraph.

23.     Admits that Plaintiffs have not consented to Intuit's use of the name "H&R Block," but denies any implication that Plaintiffs' consent is required because, as a matter of law, Intuit is entitled to use the name "H&R Block" to refer accurately to H&R Block.

Defendant further avers that H&R Block engages in the same type of comparative advertising in which H&R Block uses Intuit's TurboTax® trademark to compare TurboTax® to H&R Block products and services.

24.     Denies the allegations in this paragraph, and further avers that the storyboard attached as Exhibit C to the Complaint, which was not created by Intuit and purports to be a "true and correct copy" of one of Intuit's current television advertisements, is inaccurate and improperly transcribed.

25.     Denies the allegations in this paragraph and avers that H&R Block has misrepresented the text of Intuit's television advertisement.

26.     Denies the allegations in this paragraph, and further avers that Intuit had a reasonable basis for determining the number of tax returns allegedly prepared by H&R Block stores.  In its 2004 annual report filed with the United States Securities and Exchange Commission, for example, H&R Block, Inc. provided a table entitled "Five Years in Review" wherein it stated that U.S. H&R Block stores had prepared 15.9 million returns in 2004, 16.3 million returns in 2003, 16.9 million returns in 2002, 16.4 million returns in 2001 and 16.3 million returns in 2000.  In addition, in its publicly available January 10, 2006 "Investment Community Conference" statement, H&R Block, Inc. stated that it filed 16.0 million "assisted tax returns" in H&R Block stores in 2005.  On February 10, 2005, HRB Royalty, Inc. and H&R Block Enterprises, Inc. filed a verified complaint in the United States District Court for the District of New Jersey on February 10, 2005 wherein they stated "in 2004, H&R Block handled approximately one in every eight tax returns prepared in the United States . . . ."  The IRS reported that it received a total of 132,200,000 returns in 2004; one out of every eight of those returns, that figure translates to 16,525,000 returns prepared by H&R Block in 2004.  In contrast,

H&R Block claims in the Complaint that TurboTax® was used to prepare 21 million returns in 2004.

27.     Denies the inference that TurboTax® was not used to prepare more than 21 million total returns in 2004, but admits the allegation in this paragraph regarding the transcript of the First-Quarter Fiscal 2006 Conference Call Remarks posted on Intuit's website, and further avers that the reference to more than 21 million returns in the conference call was a reference only to the number of federal returns prepared using TurboTax®.

28.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph, but avers that this allegation contradicts all public statements made by Plaintiffs or H&R Block, Inc. of which Intuit is aware.  As discussed in paragraph 26, H&R Block, Inc. has repeatedly and publicly reported to the Securities and Exchange Commission and to the public investment community that H&R Block stores prepared fewer than 19 million returns in each of the previous six tax years.  Additionally, in its 2005 annual report, H&R Block, Inc. stated the following:

> We served 19.1 million clients in the U.S. during fiscal year 2005, compared to 19.3 million in 2004 and 19.5 million in 2003. "Clients served" includes taxpayers for whom we prepared income tax returns in offices, federal software units sold, online completed and paid federal returns and paid online state returns when no federal return was purchased, as well as taxpayers for whom we provided only paid electronic filing services.  Returns for our U.S. clients constituted 15.5% of an IRS estimate of total individual income tax returns filed as of April 29, 2005, compared to 15.7% in 2004 and 16.0% in 2003.

The IRS reported that as of April 29, 2005, it had received a total of 122,090,000 individual tax returns.  Thus, according to H&R Block, Inc.'s SEC filing, H&R Block was responsible for a total of 18,923,950 returns for tax year 2004.  Intuit avers that upon its information and belief that more tax returns were prepared using TurboTax® than at all H&R Block stores last year and

that more federal tax returns were prepared using TurboTax® than at all H&R Block stores last year.

        29.     Admits it had an advertisement that stated "TurboTax® asks me questions just like H&R Block does" as part of the sentence "TurboTax® asks me questions just like H&R Block does; then puts the answers in the right forms," but denies the remaining allegations of this paragraph.

        30.     Denies the allegations in this paragraph.

        31.     Denies the allegations in this paragraph.

        32.     Denies knowledge or information sufficient to constitute a belief as to the truth of the allegation that the radio advertisements ran approximately 42 times in the Kansas City and St. Louis markets from January 9-12, 2006, but admits that the radio advertisement was part of a national radio advertising campaign that ran in more than twenty-five other markets across the country.

        33.     Denies the allegations in this paragraph and responds that this paragraph states legal conclusions to which no responsive pleading is required.

        34.     Admits that Defendant received a cease and desist letter sent on behalf of H&R Block, Inc. (which is not a plaintiff in this action) that gave Intuit less than 24 hours to respond, but denies the allegation that any named Plaintiff has sent a cease and desist letter to Defendant. Admits that the letter attached as Exhibit E to the Complaint is a true and correct copy of the cease and desist correspondence sent to Defendant on behalf of H&R Block, Inc. on or about January 11, 2006, but denies all remaining allegations of this paragraph including the implication that Intuit did not make a good faith effort to respond to the letter.

35.     Admits that this lawsuit followed the receipt of a cease and desist letter by Defendant and sent on behalf of H&R Block, Inc., but denies the allegation that this lawsuit was preceded by any cease and desist correspondence sent on behalf of any named Plaintiff and any implication that the Plaintiffs had no choice but to sue Intuit.

## COUNT I

36.     Incorporates by reference all above responses to the allegations of the Complaint as if fully set forth herein.

37.     Denies the allegations in this paragraph.

38.     Denies the allegations of this paragraph, except that admits that Intuit used the name "H&R Block" in certain of its advertisements accurately to refer to H&R Block in the context of promoting its TurboTax® product in commerce.

39.     Denies the allegations in this paragraph.

40.     Denies the allegations in this paragraph and responds that this paragraph states a legal conclusion to which no responsive pleading is required.

41.     Denies the allegations in this paragraph.

42.     Denies the allegations in this paragraph and avers that H&R Block has agreed to withdraw its request for a temporary or preliminary injunction.

43.     Denies the allegations in this paragraph and responds further that this paragraph states a legal conclusion to which no responsive pleading is required.

## COUNT II

44.     Incorporates by reference all above responses to the allegations of the Complaint as if fully set forth herein.

45.     Denies knowledge or information sufficient to constitute a belief as to the truth of the matters alleged in this paragraph.

46.     Denies the allegations of this paragraph, except that admits that Intuit used the name "H&R Block" in certain of its advertisements accurately to refer to H&R Block in the context of promoting its TurboTax® product in commerce.

47.     Admits that Plaintiffs have not consented to Intuit's use of the name "H&R Block," but denies any implication that Plaintiffs' consent is required because, as a matter of law, Intuit is entitled to use the name "H&R Block" to refer accurately to H&R Block. Defendant further avers that H&R Block engages in the same type of comparative advertising in which H&R Block uses Intuit's TurboTax® trademark to compare TurboTax® to H&R Block products and services.

48.     Denies the allegations of this paragraph.

49.     Denies the allegations in this paragraph and responds further that this paragraph states a legal conclusion to which no responsive pleading is required.

50.     Denies the allegations of this paragraph.

51.     Denies the allegations in this paragraph and avers that H&R Block has agreed to withdraw its request for a temporary or preliminary injunction.

52.     Denies the allegations of this paragraph.

## COUNT III

53.     Incorporates by reference all above responses to the allegations of the Complaint as if fully set forth herein.

54.     Denies the allegations of this paragraph and responds that this paragraph states a legal conclusion to which no responsive pleading is required.

## DEFENDANT'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

55.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

#### (Nominative Fair Use/U.S. Constitution, First Amendment)

56.     The Complaint, and each purported claim for relief alleged therein, is barred by the First Amendment to the United States Constitution and the doctrine of nominative fair use because the references to H&R Block in Intuit's challenged advertisement are true and not false or materially misleading.

### THIRD AFFIRMATIVE DEFENSE

#### (Fair Use)

57.     Accepting for purposes for this defense Plaintiffs' allegations that the H&R Block name is a famous mark, Intuit's use of the term "H&R Block" is a fair, comparative use under 15 U.S.C. § 1125(c)(4)(A).

### FOURTH AFFIRMATIVE DEFENSE

#### (Laches and Estoppel)

58.     Plaintiffs' claims are barred in whole or in part by application of the doctrines of laches and estoppel.  Plaintiffs have repeatedly and pervasively reported the number of returns filed by H&R Block stores in publicly available documents filed with the Securities and Exchange Commission and in other sources.  Plaintiffs should be estopped from now claiming that these figures were false or inaccurate.

## FIFTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

59.     Plaintiffs' claims are barred in whole or in part by application of the doctrine of unclean hands.  Plaintiffs should not be permitted to publicly report the number of returns filed by H&R Block branded stores and then subsequently claim that these publicly reported figures are false or inaccurate.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver)

60.     Plaintiffs' claims are barred in whole or in part by application of the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

### (Acquiescence)

61.     Plaintiffs' claimed are barred by the doctrine of acquiescence.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Irreparable Harm)

62.     Plaintiffs' claims for injunctive relief are barred as a matter of law because Plaintiffs have not suffered any irreparable harm as a result of the acts alleged in the complaint.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

63.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate their alleged damages.

## TENTH AFFIRMATIVE DEFENSE

### (Third Party Conduct)

64.     The damages, if any, that were allegedly sustained by Plaintiffs as a result of the acts contained in the complaint were caused in whole or in part or were contributed to by reason of the acts, omissions, negligence, and/or intentional misconduct of third parties over which Defendant had no control.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

65.     Plaintiffs' claims for injunctive relief are barred as a matter of law because Plaintiffs have an adequate remedy at law for any damages resulting from the actions alleged in the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

### (Contributory and/or Comparative Negligence)

66.     Plaintiffs failed to exercise reasonable care in protecting their own alleged interests in the trademarks and/or goodwill referenced in the complaint and the loss or damage allegedly sustained by Plaintiffs was proximately caused or contributed to by Plaintiffs' own contributory and/or comparative negligence.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Abuse of Process)

67.     Plaintiffs' claims are without merit and are an attempt to harass Intuit and stifle free competition such that Plaintiffs' actions constitute an abuse of process.

## COUNTERCLAIMS

68.     Defendant and Counterclaimant Intuit Inc., hereby allege as follows for its counterclaims against all Plaintiffs, H&R Block, Inc. and H&R Block Services, Inc. (collectively

the "Counterclaim Defendants" and subject to a contemporaneously filed Motion to Join H&R Block, Inc. for fraud, negligent misrepresentation, and false and misleading advertising relating to representations concerning the number of returns prepared or filed by H&R Block stores; false and misleading advertising relating to Counterclaim Defendants' statements that the TaxCut software is supported by 90,000 tax professionals; and trademark infringement relating to their unlawful use of TurboTax®'s registered check and circle trademark and use of TurboTax®'s registered name in connection with a false and misleading statement:

## NATURE OF THE COUNTERCLAIMS

### H&R Block's Fraudulent Representations Concerning its Numbers of Returns

69.     Prior to filing this lawsuit, Counterclaim Defendants consistently published the number of returns for which H&R Block stores were responsible, including filings with the SEC and statements made to the investing public, the Federal Courts, the general public, and this Court. These figures consistently stated that H&R Block stores were responsible for between 16 and 19 million tax returns in each of the previous six tax years. These figures are consistent with advertisements that H&R Block disseminated prior to filing this lawsuit. Since filing this lawsuit, however, Plaintiffs have provided the Court with varying figures relating to the number of tax returns allegedly prepared by H&R Block stores that are inconsistent with Counterclaim Defendants' pre-litigation SEC filings, statements and advertisements.

70.     Intuit reasonably relied on H&R Block's publicly reported pre-litigation figures in concluding that Intuit's advertisements were truthful and that more returns were prepared last year with TurboTax® than at all the H&R Block stores. Assuming, in the alternative, that H&R Block's prior statements to the SEC, the investing public, the Federal Courts and the general public were false, H&R Block has defrauded Intuit, and Intuit has

suffered damage as a result of its reasonable reliance on H&R Block's false statements. Intuit therefore brings its first counterclaim on principles of common law fraud.

**H&R Block's Negligent Representations Concerning its Numbers of Returns**

71. In the event that H&R Block's pre-litigation statements were false, Counterclaim Defendants have engaged in, at a minimum, negligent misrepresentation in falsely reporting, through SEC filings, an Investment Community Conference statement and in advertisements, the number of tax returns filed or prepared by H&R Block stores.

**H&R Block's False Advertising Concerning its Numbers of Returns**

72. In the event that H&R Block's pre-litigation statements were false, these statements, which were commercial speech disseminated to the investing public and the general public, constitute false advertising under state and federal law, as set forth below.

**H&R Block's False Advertising Concerning the "Support of 90,000 Tax Professionals"**

73. Counterclaim Defendants have engaged in and are currently engaging in a false and misleading advertising campaign involving the "TaxCut" software that is distributed by another H&R Block entity. As part of this campaign, Counterclaim Defendants refer to the TaxCut software as backed by the "support of 90,000 tax professionals," thereby representing and implying that (1) H&R Block employs 90,000 tax professionals, (2) each of whom is trained in the use and support of the TaxCut software and (3) will in fact provide support for the software. A copy of one such advertisement is attached hereto as Exhibit E and a printout from a portion of H&R Block's website that is part of this campaign is attached as Exhibit F. Upon information and belief these statements are false and misleading to consumers and the general public.

**H&R Block's Trademark Infringement**

74. Counterclaim Defendants' "90,000 tax professionals" advertising campaign also infringes on Intuit's legally protected trademarks. The infringing advertisement depicts Intuit's federally registered circle and check mark logo in an attempt to benefit from the goodwill and brand recognition that Intuit has developed, at considerable expense, for its award-winning TurboTax® software. The use of this trademark is unauthorized, gratuitous, and is likely to confuse, deceive or mislead consumers. Further, the advertisement uses the TurboTax® name, a registered trademark of Intuit, in connection with its false and misleading statement that TaxCut has the "support of 90,000 tax professionals." This wrongful use of the TurboTax® registered trademark is likely to mislead and confuse consumers and damage Intuit's goodwill.

<b>The Parties</b>

75. Counterclaimant Intuit Inc. is a Delaware corporation with its principal place of business in Mountain View, California. Intuit is in the business of developing, publishing, distributing and marketing financial software for individual consumers and small businesses and offers other related goods and services. Intuit produces and distributes, among other things, the award-winning Quicken® line of personal finance software and the award-winning and industry leading tax preparation software, TurboTax®. Intuit is a competitor of H&R Block.

76. On information and belief, Plaintiff and Counterclaim Defendant H&R Block Eastern Enterprises, Inc. is a Missouri Corporation with its principal office located at 4400 Main Street, Kansas City, MO 64111. On information and belief, Block Eastern Enterprises, Inc. is a subsidiary of H&R Block, Inc.

77. On information and belief, Plaintiff and Counterclaim Defendant HRB Royalty, Inc. is a Delaware Corporation with its principal office located at Suite 101, TK House, Bayside Executive Park, West Bay Street and Blake Road, P.O. Box N-8220, Nassau, Bahamas. On information and belief, HRB Royalty, Inc. is a wholly-owned subsidiary of H&R Block, Inc..

78. On information and belief, Plaintiff and Counterclaim Defendant H&R Block Enterprises, Inc. is a Missouri Corporation and a subsidiary of H&R Block, Inc.

79. On information and belief, Plaintiff and Counterclaim Defendant H&R Block and Associates, L.P. is a Delaware Corporation and a subsidiary of H&R Block, Inc.

80. On information and belief, Counterclaim Defendant H&R Block, Inc. is a Missouri Corporation with its principal place of business in Kansas City, Missouri. On information and belief, H&R Block, Inc. is the parent corporation of all Plaintiffs.

81. On information and belief, Counterclaim Defendant H&R Block Services, Inc. is a Missouri Corporation with its principal place of business in Kansas City, Missouri. On information and belief, H&R Block Services, Inc. is a subsidiary of H&R Block, Inc.

## Jurisdiction And Venue

82. Intuit's counterclaims are based upon Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), California Business & Professions Code § 17200 *et seq.*, and the common law of Missouri and California. The amount in controversy exceeds $75,000 and this Court has jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. § 1332, Section 39 of the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1331. Supplemental jurisdiction over the remaining claims exists under 28 U.S.C. § 1367.

83.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 82.

**H&R Block's False Statements Concerning Its Numbers of Returns**

84.     Counterclaim Defendants have falsely stated their numbers of returns – either in the Complaint and information they provided this Court or in their pre-litigation statements, including filings with the SEC and other statements to investors.

85.     Prior to instituting this litigation, Counterclaim Defendants have repeatedly and publicly stated that H&R Block stores were responsible for between 16 and 19 million returns in each of the past six tax years.  Examples of these statements include:

- H&R Block, Inc.'s 2004 Annual Report (filed with the Securities and Exchange Commission and attached in relevant portion hereto as Exhibit A) wherein it reported that it prepared the following number of returns in H&R Block U.S. retail stores:

     2004:  15.9 million returns prepared

     2003:  16.3 million returns prepared

     2002:  16.9 million returns prepared

     2001:  16.4 million returns prepared

     2000:  16.3 million returns prepared

- H&R Block, Inc.'s 2005 Annual Report (filed with the Securities and Exchange Commission and attached in relevant portion hereto as Exhibit B) wherein it stated:

     We served 19.1 million clients in the U.S. during
     fiscal year 2005, compared to 19.3 million in 2004
     and 19.5 million in 2003 . . . . Returns for our U.S.

> clients constituted 15.5% of an IRS estimate of total individual income tax returns filed as of April 29, 2005, compared to 15.7% in 2004 and 16.0% in 2003.

As of April 29, 2005, the IRS estimated that it had received 122,090,000 returns for tax year 2004. H&R Block's reported 15.5% share of those 122,090,000 returns corresponds to 18,923,950 returns filed in tax year 2004 for its U.S. customers. This amount does not specify what subset of those filed returns were prepared by H&R Block.

- H&R Block, Inc.'s publicly available January 10, 2006 "Investment Community Conference" statement (attached in relevant portion hereto as Exhibit C) wherein it reported that it filed 16.0 million "assisted tax returns" in its retail stores in 2005.

- A verified complaint (signed under penalty of perjury and attached hereto as Exhibit D) that H&R Block Eastern Enterprises, Inc. and HRB Royalty, Inc. (two of the same parties in this suit) filed in the United States District Court for the District of New Jersey on February 10, 2005 wherein they alleged "in 2004, H&R Block handled approximately one in every eight tax returns prepared in the United States . . . ." In 2004, the IRS reported that it received a total of 132,200,000 returns. One out of every eight of those 132,200,000 returns translates to 16,525,000 returns reportedly prepared by H&R Block in 2004.

86. In contradiction to their pre-litigation statements, Plaintiffs' Complaint asserts that H&R Block stores prepared more than 26 million returns. Moreover, four days after filing its Complaint, H&R Block submitted to the Court yet a different number of returns prepared.

87.     If Plaintiffs' litigation position regarding the number of returns they prepared is correct, in contradiction to the prior statements of the Counterclaim Defendants, H&R Block, Inc. repeatedly, publicly and falsely represented in SEC filings and in its "Investment Community Conference" statement that H&R Block stores were responsible for fewer than 19 million returns in each of the previous six tax years.

**H&R Block's Efforts to Conceal their Contradictory Numbers of Returns**

88.     On information and belief, Counterclaim Defendants intended the SEC, the investment community, and the public at large to rely and act upon what Plaintiffs now implicitly concede are inconsistent statements made in the above-referenced SEC filings and Investment Community Conference statement.  As H&R Block's attorney stated at the January 18, 2006 hearing, H&R Block, Inc. is "a publicly-traded company.  We do have investors."  (Jan. 18, 2006 Hearing Tr. at 13.)

89.     Recognizing that the public relies on statements H&R Block makes about its numbers of returns, Plaintiffs' counsel asked this Court to order that the new number of returns that Plaintiffs' counsel provided the Court on January 17, 2006 in support of their claims against Intuit and which contradicted Counterclaim Defendants' prior statements be kept under seal so that it could not be construed as a "representation to the public."  (Jan. 18, 2006 Hearing Tr. at 13.)  As their counsel explained, Plaintiffs did not want "anybody other than us making a misuse of those numbers indicating that that [new number]'s somehow a representation by us to the public."  (Jan. 18, 2006 Hearing Tr. at 13.)  Thus, in bringing this lawsuit, H&R Block contends that Intuit was wrong to rely on the representations it previously made to the SEC, the investment community, the Federal Courts, and the public at large, but it does not want the public to know the number it is now contending is the actual number.

**Intuit's Reasonable Reliance to its Detriment on H&R Block's Published Numbers**

90.     Intuit was unaware of the possible falsity of Counterclaim Defendants' pre-litigation filings and statements and justifiably relied on them in preparing and airing its advertisement that is the subject of Plaintiffs' claims against it.  As a result of this justifiable reliance, Intuit invested time, money, and resources into developing and airing an advertising campaign comparing the numbers of returns filed by Counterclaim Defendants and those filed using TurboTax®.

**H&R Block's False Advertisement Concerning the Support of "90,000 Tax Professionals"**

91.     Counterclaim Defendants' current advertising campaign referring to the TaxCut software as backed by the "support of 90,000 tax professionals" represents and implying that (1) H&R Block employs 90,000 tax professionals and (2) each of these professionals is trained in the use and support of the TaxCut software and (3) will in fact provide support for the software.  Upon information and belief these statements are false and misleading to consumers and the general public.

**H&R Block's Trademark Infringement**

92.     Intuit has a registered trademarks in the name "TurboTax" and the distinctive circle and check mark logo (the "Marks").  Intuit has adopted these Marks and used them in interstate commerce in the sale and promotion of Intuit's award-winning TurboTax® software.

93.     On October 25, 2000, Intuit filed an application to register the mark with the United States Patent and Trademark Office.  On November 27, 2001, the mark was registered on the Principal Register under the Act of 1946 covering the use of the mark for providing tax

information, consultation, calculation, preparation and filing services. The registration of the mark is valid.

94.     Continuously since on or about October 1, 1984, Intuit has used the check mark logo to identify and promote its TurboTax® software and to distinguish TurboTax® from products and services sold or provided by others, by, among other things, prominently displaying the mark on the TurboTax® software, displays, promotional materials, and advertisements.

95.     On September 12, 2003, Intuit filed an application to register the mark with the United States Patent and Trademark Office. On May 17, 2005, the mark was registered on the Principal Register under the Act of 1946 covering the use of the mark on computer software for tax planning, tax preparation and tax filing. The registration of the mark is valid.

96.     Continuously since on or about November 1, 2000, Intuit has used the mark to identify and promote its TurboTax® software and to distinguish TurboTax® from software made and sold by others, by, among other things, prominently displaying the mark on the TurboTax® software, displays, promotional materials, and advertisements.

97.     Intuit has not consented to Counterclaim Defendants' use of its Marks, nor the use of the Marks by any H&R Block entity.

98.     Counterclaim Defendants have infringed on the Marks in interstate commerce through Counterclaim Defendants' "90,000 Tax Professionals" advertising campaign wherein the Marks are displayed in connection with TaxCut software, a competitor to TurboTax®.

99.     Counterclaim Defendants have used the Marks with the intent to confuse, mislead and deceive consumers and in an attempt to benefit from the goodwill and brand

recognition that Intuit has developed, at considerable expense, for its award-winning TurboTax®
software.

### First Counterclaim for Relief
**(Common Law Fraud/Fraudulent Misrepresentation)**

100.    Intuit hereby realleges, as if set forth fully herein, the allegations of its
affirmative defenses and of paragraphs 68 through 99.

101.    If Plaintiffs' litigation position regarding the number of returns they
prepared is correct, in contradiction to the prior statements of the Counterclaim Defendants,
Counterclaim Defendants have engaged in fraudulent misrepresentation to the detriment of
Intuit.

102.    If Plaintiffs' litigation position regarding the number of returns they
prepared is correct, on information and belief, H&R Block, Inc. and all Counterclaim Defendants
contributed to and ratified these false statements and had knowledge of the falsity of these
statements at the time they were made.

103.    On information and belief, Counterclaim Defendants intended the SEC,
the investment community, and the public at large to rely and act upon what Plaintiffs now
implicitly concede are inconsistent with statements made in the above referenced SEC filings
and Investment Community Conference statement.

104.    Unaware of the possible falsity of Counterclaim Defendants' statements
concerning the number of returns, Intuit justifiably relied on them when preparing and airing the
advertising campaign challenged by Plaintiffs.

105.    As a result of its justifiable reliance on Counterclaim Defendants'
statements made in SEC filings and public documents, Intuit invested time, money, and
resources into developing and airing an advertising campaign comparing the relative numbers of

returns prepared by Counterclaim Defendants and those prepared using TurboTax®.  If Counterclaim Defendants' statements are in fact false, Intuit has been damaged by at least the amount it expended to develop and purchase its original and subsequently modified advertising campaign.

106.    Assuming Counterclaim Defendants' pre-litigation representations were false, as a result, Intuit has also modified its original advertising campaign that it developed and aired in good faith based upon Counterclaim Defendants' own public filings and statements, resulting proximately and directly in significant unanticipated expenses to Intuit relating to its advertising campaign.  Thus, assuming these statements were false, as Plaintiffs now implicitly allege, in reasonable reliance thereon, Intuit has been damaged at a minimum by the value of the original advertising campaign and any additional expenses Intuit has been required to make to this campaign.

107.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, the above-described acts constitute fraudulent misrepresentation entitling Intuit to an award of damages against Counterclaim Defendants, as well as the recovery of its costs and attorneys' fees.

108.    Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

109.    The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of punitive damages in an amount sufficient to punish Counterclaim Defendants and deter such conduct in the future.

**Second Counterclaim for Relief**
**(Negligent Misrepresentation)**

110.    Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 109.

111.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, in contradiction to the prior statements of the Counterclaim Defendants, Counterclaim Defendants, in the course of business and in pursuit of pecuniary interests, have engaged in negligent misrepresentation to the detriment of Intuit.

112.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, on information and belief, H&R Block, Inc. knew or should have known that it incorrectly represented in its SEC filings and in its "Investment Community Conference" statement that H&R Block stores were responsible for fewer than 19 million returns in each of the previous six tax years.

113.    On information and belief, H&R Block, Inc. and all Counterclaim Defendants contributed to and ratified these statements and knew or should have known the inaccuracy of these statements at the time they were made, if they are in fact inaccurate.

114.    On information and belief, Counterclaim Defendants intentionally provided the information in its January 10, 2006 "Investment Community Conference" statement that H&R Block stores filed 16.0 million "assisted tax returns" in 2005 for the guidance of the investment community and intended the SEC, the investment community and the public at large to rely on and act upon the statements made in the above referenced SEC filings and Investment Community Conference statement.

115.    Intuit was unaware of the potential falsity of these statements and justifiably relied on these filings and statements and the apparent veracity of the numbers of

returns filed by Counterclaim Defendants when Intuit developed and aired its advertising campaign that is the subject of this lawsuit.

116.    If Counterclaim Defendants' statements are in fact false, Intuit has been damages by at least the amount it expended to develop and purchase its original and subsequently modified advertising campaign.

117.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, the above described acts constitute negligent misrepresentation entitling Intuit to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

118.    Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

### Third Counterclaim for Relief
### (False Advertising in Violation of Lanham Act § 43(a) Relating to the Number of Returns)

119.    Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 118.

120.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, in contradiction to the pre-litigation statements of the Counterclaim Defendants, H&R Block, Inc. represented in SEC filings and in its "Investment Community Conference" statement that H&R Block stores were responsible for fewer than 19 million returns in each of the previous six tax years.

121.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, on information and belief, H&R Block, Inc. and all Counterclaim Defendants

contributed to and ratified these statements and had knowledge of the inaccuracy of these statements at the time they were made.

122.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, Counterclaim Defendants are engaging in false advertising and unfair business practices by misrepresenting in SEC filings and investment statements the number of returns for which H&R Block stores were responsible in the past six tax years.

123.    As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

124.    Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants. Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

125.    The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of treble damages and an award of Counterclaim Defendants' profits, gains and advantages derived from these unlawful acts.

### Fourth Counterclaim for Relief
#### (False Advertising in Violation of Lanham Act § 43(a) Relating to the "90,000 Tax Professionals")

126.    Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 125.

127.    H&R Block has engaged in and is currently engaging in a false and misleading advertising campaign involving the "TaxCut" software that is distributed by another H&R Block entity.

128.     As part of this campaign, an advertisement falsely states that the TaxCut software is backed by the "support of 90,000 tax professionals," thereby implying that (1) H&R Block employs 90,000 tax professionals and (2) that each of these professionals is trained in the use and support of the TaxCut software and will in fact provide support for the software.  On information and belief, the aforementioned assertions are false.

129.     On its website, H&R Block, Inc. is presently running a similar advertisement as part of the campaign in which it asserts that the TaxCut software is "the only tax solution backed by 90,000 tax professionals."

130.     On information and belief, all Counterclaim Defendants provided authority for the claims made in this campaign.

131.     On information and belief, Counterclaim Defendants' campaign misrepresents the nature, characteristics and qualities of Counterclaim Defendants' goods, services and/or commercial activities.

132.     Intuit has been or is likely to be injured as a result of Counterclaim Defendants' unlawful conduct, either by diversion of sales from Intuit or the loss of goodwill associated with the TurboTax® brand.

133.     The aforementioned acts and practices constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

134.     As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

135.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

136.     The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of treble damages, punitive damages, and an award of Counterclaim Defendants' profits, gains and advantages derived from these unlawful acts.

### Fifth Counterclaim for Relief
**(Unfair Competition and False Advertising in Violation of California Bus. & Prof. Code § 17200 *et. seq.*)**

137.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 136.

138.     Counterclaim Defendants are engaging in unfair competition by promoting their services through false, misleading and deceptive representations of fact in connection with the sale or advertisement of goods and services in trade and commerce in California.

139.     On information and belief, Counterclaim Defendants made the above-described representations and statements knowing at all times that they were false, untrue, and misleading.

140.     Counterclaim Defendants have diverted trade from Intuit and other competitors by falsely representing that the goods and services provided by Counterclaim Defendants have qualities which in fact they do not.

141.     Counterclaim Defendants have violated California Business & Professions Code § 17200 *et seq.* by using false or misleading descriptions and representations of material

facts in commercial advertising or promotion in connection with goods in commerce directed to the state of California.

142.    As a result of the aforementioned acts, Intuit is entitled to an award of restitution and disgorgement of all monies wrongfully obtained by Counterclaim Defendants as a result of such unfair competition and business practices.

143.    Intuit has suffered actual damages in the form of lost sales and loss of goodwill as a result of Counterclaim Defendants' unfair competition and business practices.

144.    Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

### Sixth Counterclaim for Relief
### (Common Law Unfair Competition)

145.    Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 144.

146.    The aforementioned acts and practices constitute actionable unfair competition under Missouri and California common law.

147.    As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorney fees.

148.    Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their impermissible actions.

**Seventh Counterclaim for Relief**
**(Trademark Infringement in Violation of Section 32(l) of the Lanham Act)**

149.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 148.

150.     Counterclaim Defendants have engaged and are engaging in an advertising campaign that infringes on Intuit's legally protected trademarks.

151.     The registrations of Intuits' Marks are valid.

152.     Intuit has not consented to Counterclaim Defendants' use of the Marks, nor the use of the mark by any H&R Block entity.

153.     Counterclaim Defendants have infringed on the Marks in interstate commerce through using them in an advertising campaign wherein they are displayed in connection with TaxCut software, a competitor to TurboTax®.

154.     Upon information and belief, consumers are likely to be misled or deceived by Counterclaim Defendants' use of the Marks.

155.     Upon information and belief, Counterclaim Defendants have used the Marks with the intent to confuse, mislead and deceive consumers and in an attempt to benefit from the goodwill and brand recognition that Intuit has developed, at considerable expense, for its award-winning TurboTax® software.

156.     As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

157.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

158.     The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of treble damages and an award of Counterclaim Defendants' profits, gains and advantages derived from these unlawful acts.

## RESERVATION OF RIGHT TO AMEND

159.     Defendant reserves the right to allege other affirmative defenses and/or counterclaims as they become known during the court of discovery, and hereby reserves the right to amend its answer to allege such affirmative defenses and/or counterclaims at a later time.

## PRAYER

WHEREFORE, Defendant prays for judgment as follows:

(a)     That Plaintiffs take nothing by this action and that the Complaint be dismissed in its entirety with prejudice;

(b)     That Intuit obtain a judgment in its favor on its counterclaims;

(c)     That the Court enter an injunction against all Counterclaim Defendants permanently enjoining them from publishing, broadcasting or otherwise disseminating false or misleading advertising or engaging in acts which constitute unfair competition;

(d)     For an award of damages resulting from Counterclaim Defendants' fraud and/or negligent misrepresentation;

(e)     For an award of Counterclaim Defendants' profits, gains and advantages derived from their unlawful conduct;

(f)     For disgorgement of Counterclaim Defendants' ill-gotten gains obtained as a result of Counterclaim Defendants' false advertising and unfair competition;

(g)     For an award of treble damages pursuant to 15 U.S.C. § 1117;

(h)     For an award of punitive and exemplary damages to punish Counterclaim

        Defendants for their willful misconduct and to deter any future willful

        misconduct;

(i)     For costs of suit and attorney's fees incurred herein; and

(j)     For such other and further relief and the Court may deem just and proper.

### JURY TRIAL DEMAND

Defendant respectfully requests a trial by jury.

DATED:  February 2, 2006           QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
                                   Quinn Emanuel Urquhart Oliver & Hedges, LLP
                                   555 Twin Dolphin Drive, Suite 560
                                   Redwood Shores, CA  94065-2139


                                   By_____/s/ Claude M. Stern_____
                                      Claude M. Stern (admitted *pro hac vice*)
                                      Margret M. Caruso (admitted *pro hac vice*)
                                      Doug Colt (admitted *pro hac vice)*

                                      Attorneys for Defendant and Counterclaimant
                                      Intuit Inc.