UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| H&R Block Eastern Enterprises, Inc., HRB Royalty, Inc., H&R Block Enterprises, Inc. and H&R Block and Assoc., L.P.,<br><br>               Plaintiffs,<br><br>vs.<br><br>Intuit Inc.,<br><br>               Defendant. | CASE NO. 06-0039-CV-W-SOW<br><br><br>**FIRST AMENDED COUNTERCLAIM** |
| Intuit Inc.,<br><br>               Counterclaimant,<br><br>vs.<br><br>H&R Block Eastern Enterprises, Inc., HRB Royalty, Inc., H&R Block Enterprises, Inc., H&R Block and Assoc., L.P., H&R Block, Inc. and H&R Block Digital Tax Solutions, LLC,<br><br>               Counterclaim Defendants. | |

For its first amended counterclaim, defendant and counterclaimant Intuit Inc. ("Intuit" or "Counterclaimant"), as against H&R Block Eastern Enterprises, Inc., HRB Royalty, Inc., H&R Block Enterprises, Inc., H&R Block and Assoc., L.P., H&R Block, Inc., and H&R Block Digital Tax Solutions, LLC ("Counterclaim Defendants" or "H&R Block"), pleads and avers as follows:

51057/1850619.1

## PRELIMINARY STATEMENT

Intuit asserts this first amended counterclaim pursuant to the Court's order of March 13, 2006, granting Intuit leave to amend its counterclaim. For the convenience of the parties and of the Court, Intuit hereby realleges, as if set forth fully herein, the allegations of paragraphs 1 through 67 of Intuit's answer and counterclaims filed with this Court on February 2, 2006, and has numbered the paragraphs of this amended counterclaim beginning with paragraph 68, which was the number of the first counterclaim paragraph in the original pleading.

## COUNTERCLAIMS

68.     Defendant and Counterclaimant Intuit Inc., hereby alleges as follows for its counterclaims against all Counterclaim Defendants for fraud, negligent misrepresentation, and false and misleading advertising relating to representations concerning the number of returns prepared or filed by H&R Block stores; false and misleading advertising relating to Counterclaim Defendants' statements that the TaxCut software is supported by 90,000 tax professionals; and trademark infringement relating to their unlawful use of TurboTax®'s registered check and circle trademark and use of TurboTax®'s registered name in connection with a false and misleading statement:

## NATURE OF THE COUNTERCLAIMS

### H&R Block's Fraudulent Representations Concerning its Numbers of Returns

69.     Prior to filing this lawsuit, Counterclaim Defendants consistently published the number of returns for which H&R Block stores were responsible, including filings with the SEC and statements made to the investing public, the Federal Courts, the general public, and this Court. These figures consistently stated that H&R Block stores were responsible for between 16 and 19 million tax returns in each of the previous six tax years. These figures are

consistent with advertisements that H&R Block disseminated prior to filing this lawsuit. Since filing this lawsuit, however, Plaintiffs have provided the Court with varying figures relating to the number of tax returns allegedly prepared by H&R Block stores that are inconsistent with Counterclaim Defendants' pre-litigation SEC filings, statements and advertisements.

70.     Intuit reasonably relied on H&R Block's publicly reported pre-litigation figures in concluding that Intuit's advertisements were truthful and that more returns were prepared last year with TurboTax® than at all the H&R Block stores. Assuming, in the alternative, that H&R Block's prior statements to the SEC, the investing public, the Federal Courts and the general public were false, H&R Block has defrauded Intuit, and Intuit has suffered damage as a result of its reasonable reliance on H&R Block's false statements. Intuit therefore brings its first counterclaim on principles of common law fraud.

**H&R Block's Negligent Representations Concerning its Numbers of Returns**

71.     In the event that H&R Block's pre-litigation statements were false, Counterclaim Defendants have engaged in, at a minimum, negligent misrepresentation in falsely reporting, through SEC filings, an Investment Community Conference statement and in advertisements, the number of tax returns filed or prepared by H&R Block stores.

**H&R Block's False Advertising Concerning its Numbers of Returns**

72.     In the event that H&R Block's pre-litigation statements were false, these statements, which were commercial speech disseminated to the investing public and the general public, constitute false advertising under state and federal law, as set forth below.

**H&R Block's False Advertising Concerning the "Support of 90,000 Tax Professionals"**

73.     Counterclaim Defendants have engaged in and are currently engaging in a false and misleading advertising campaign involving the "TaxCut" software that is distributed by

another H&R Block entity. As part of this campaign, Counterclaim Defendants refer to the TaxCut software as backed by the "support of 90,000 tax professionals," thereby representing and implying that (1) H&R Block employs 90,000 tax professionals, (2) each of whom is trained in the use and support of the TaxCut software and (3) will in fact provide support for the software. A copy of one such advertisement is attached hereto as Exhibit E and a printout from a portion of H&R Block's website that is part of this campaign is attached as Exhibit F. Upon information and belief these statements are false and misleading to consumers and the general public.

## H&R Block's Trademark Infringement

74. Counterclaim Defendants' "90,000 tax professionals" advertising campaign also infringes on Intuit's legally protected trademarks. The infringing advertisement depicts Intuit's federally registered circle and check mark logo in an attempt to benefit from the goodwill and brand recognition that Intuit has developed, at considerable expense, for its award-winning TurboTax® software. The use of this trademark is unauthorized, gratuitous, and is likely to confuse, deceive or mislead consumers. Further, the advertisement uses the TurboTax® name, a registered trademark of Intuit, in connection with its false and misleading statement that TaxCut has the "support of 90,000 tax professionals." This wrongful use of the TurboTax® registered trademark is likely to mislead and confuse consumers and damage Intuit's goodwill.

## The Parties

75. Counterclaimant Intuit Inc. is a Delaware corporation with its principal place of business in Mountain View, California. Intuit is in the business of developing, publishing, distributing and marketing financial software for individual consumers and small businesses and offers other related goods and services. Intuit produces and distributes, among

other things, the award-winning Quicken® line of personal finance software and the award-winning and industry leading tax preparation software, TurboTax®. Intuit is a competitor of H&R Block.

76.     On information and belief, Plaintiff and Counterclaim Defendant H&R Block Eastern Enterprises, Inc. is a Missouri Corporation with its principal office located at 4400 Main Street, Kansas City, MO 64111. On information and belief, Block Eastern Enterprises, Inc. is a subsidiary of H&R Block, Inc.

77.     On information and belief, Plaintiff and Counterclaim Defendant HRB Royalty, Inc. is a Delaware Corporation with its principal office located at Suite 101, TK House, Bayside Executive Park, West Bay Street and Blake Road, P.O. Box N-8220, Nassau, Bahamas. On information and belief, HRB Royalty, Inc. is a wholly-owned subsidiary of H&R Block, Inc.

78.     On information and belief, Plaintiff and Counterclaim Defendant H&R Block Enterprises, Inc. is a Missouri Corporation and a subsidiary of H&R Block, Inc.

79.     On information and belief, Plaintiff and Counterclaim Defendant H&R Block and Associates, L.P. is a Delaware Corporation and a subsidiary of H&R Block, Inc.

80.     On information and belief, Counterclaim Defendant H&R Block, Inc. is a Missouri Corporation with its principal place of business in Kansas City, Missouri. On information and belief, H&R Block, Inc. is the parent corporation of all Plaintiffs.

81.     On information and belief, Counterclaim Defendant H&R Block Digital Tax Solutions, LLC is a Delaware Limited Liability Company with its principal place of business in Kansas City, Missouri. On information and belief, H&R Block Digital Tax Solutions, LLC, owns, publishes and distributes the TaxCut tax preparation software and TaxCut online tax preparation service, and is a subsidiary of H&R Block, Inc.

**Jurisdiction And Venue**

82.     Intuit's counterclaims are based upon Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a), California Business & Professions Code § 17200 *et seq.*, and the common law of Missouri and California. The amount in controversy exceeds $75,000 and this Court has jurisdiction over the subject matter of these counterclaims pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1331. Supplemental jurisdiction over the remaining claims exists under 28 U.S.C. § 1367.

**General Allegations**

83.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 82.

**H&R Block's False Statements Concerning Its Numbers of Returns**

84.     Counterclaim Defendants have falsely stated their numbers of returns – either in the Complaint and information they provided this Court or in their pre-litigation statements, including filings with the SEC and other statements to investors.

85.     Prior to instituting this litigation, Counterclaim Defendants have repeatedly and publicly stated that H&R Block stores were responsible for between 16 and 19 million returns in each of the past six tax years. Examples of these statements include:

- H&R Block, Inc.'s 2004 Annual Report (filed with the Securities and Exchange Commission and attached in relevant portion hereto as Exhibit A) wherein it reported that it prepared the following number of returns in H&R Block U.S. retail stores:

     2004:  15.9 million returns prepared

     2003:  16.3 million returns prepared

2002: 16.9 million returns prepared

2001: 16.4 million returns prepared

2000: 16.3 million returns prepared

- H&R Block, Inc.'s 2005 Annual Report (filed with the Securities and Exchange
  Commission and attached in relevant portion hereto as Exhibit B) wherein it
  stated:

  > We served 19.1 million clients in the U.S. during
  > fiscal year 2005, compared to 19.3 million in 2004
  > and 19.5 million in 2003 . . . . Returns for our U.S.
  > clients constituted 15.5% of an IRS estimate of total
  > individual income tax returns filed as of April 29,
  > 2005, compared to 15.7% in 2004 and 16.0% in
  > 2003.

  As of April 29, 2005, the IRS estimated that it had received 122,090,000 returns
  for tax year 2004. H&R Block's reported 15.5% share of those 122,090,000
  returns corresponds to 18,923,950 returns filed in tax year 2004 for its U.S.
  customers. This amount does not specify what subset of those filed returns were
  prepared by H&R Block.

- H&R Block, Inc.'s publicly available January 10, 2006 "Investment Community
  Conference" statement (attached in relevant portion hereto as Exhibit C) wherein
  it reported that it filed 16.0 million "assisted tax returns" in its retail stores in
  2005.

- A verified complaint (signed under penalty of perjury and attached hereto as
  Exhibit D) that H&R Block Eastern Enterprises, Inc. and HRB Royalty, Inc. (two
  of the same parties in this suit) filed in the United States District Court for the
  District of New Jersey on February 10, 2005 wherein they alleged "in 2004, H&R
  Block handled approximately one in every eight tax returns prepared in the United

States . . . ." In 2004, the IRS reported that it received a total of 132,200,000 returns. One out of every eight of those 132,200,000 returns translates to 16,525,000 returns reportedly prepared by H&R Block in 2004.

86.     In contradiction to their pre-litigation statements, Plaintiffs' Complaint asserts that H&R Block stores prepared more than 26 million returns. Moreover, four days after filing its Complaint, H&R Block submitted to the Court yet a different number of returns prepared.

87.     If Plaintiffs' litigation position regarding the number of returns they prepared is correct, in contradiction to the prior statements of the Counterclaim Defendants, H&R Block, Inc. repeatedly, publicly and falsely represented in SEC filings and in its "Investment Community Conference" statement that H&R Block stores were responsible for fewer than 19 million returns in each of the previous six tax years.

**H&R Block's Efforts to Conceal their Contradictory Numbers of Returns**

88.     On information and belief, Counterclaim Defendants intended the SEC, the investment community, and the public at large to rely and act upon what Plaintiffs now implicitly concede are inconsistent statements made in the above-referenced SEC filings and Investment Community Conference statement. As H&R Block's attorney stated at the January 18, 2006 hearing, H&R Block, Inc. is "a publicly-traded company. We do have investors." (Jan. 18, 2006 Hearing Tr. at 13.)

89.     Recognizing that the public relies on statements H&R Block makes about its numbers of returns, Plaintiffs' counsel asked this Court to order that the new number of returns that Plaintiffs' counsel provided the Court on January 17, 2006 in support of their claims against Intuit and which contradicted Counterclaim Defendants' prior statements be kept under

seal so that it could not be construed as a "representation to the public." (Jan. 18, 2006 Hearing Tr. at 13.) As their counsel explained, Plaintiffs did not want "anybody other than us making a misuse of those numbers indicating that that [new number]'s somehow a representation by us to the public." (Jan. 18, 2006 Hearing Tr. at 13.) Thus, in bringing this lawsuit, H&R Block contends that Intuit was wrong to rely on the representations it previously made to the SEC, the investment community, the Federal Courts, and the public at large, but it does not want the public to know the number it is now contending is the actual number.

**Intuit's Reasonable Reliance to its Detriment on H&R Block's Published Numbers**

90.    Intuit was unaware of the possible falsity of Counterclaim Defendants' pre-litigation filings and statements and justifiably relied on them in preparing and airing its advertisement that is the subject of Plaintiffs' claims against it. As a result of this justifiable reliance, Intuit invested time, money, and resources into developing and airing an advertising campaign comparing the numbers of returns filed by Counterclaim Defendants and those filed using TurboTax®.

**H&R Block's False Advertisement Concerning the Support of "90,000 Tax Professionals"**

91.    Counterclaim Defendants' current advertising campaign referring to the TaxCut software as backed by the "support of 90,000 tax professionals" represents and implying that (1) H&R Block employs 90,000 tax professionals and (2) each of these professionals is trained in the use and support of the TaxCut software and (3) will in fact provide support for the software. Upon information and belief these statements are false and misleading to consumers and the general public.

**H&R Block's Trademark Infringement**

92.     Intuit has a registered trademarks in the name "TurboTax" and the distinctive circle and check mark logo (the "Marks").  Intuit has adopted these Marks and used them in interstate commerce in the sale and promotion of Intuit's award-winning TurboTax® software.

93.     On October 25, 2000, Intuit filed an application to register the mark with the United States Patent and Trademark Office.  On November 27, 2001, the mark was registered on the Principal Register under the Act of 1946 covering the use of the mark for providing tax information, consultation, calculation, preparation and filing services.  The registration of the mark is valid.

94.     Continuously since on or about October 1, 1984, Intuit has used the check mark logo to identify and promote its TurboTax® software and to distinguish TurboTax® from products and services sold or provided by others, by, among other things, prominently displaying the mark on the TurboTax® software, displays, promotional materials, and advertisements.

95.     On September 12, 2003, Intuit filed an application to register the mark with the United States Patent and Trademark Office.  On May 17, 2005, the mark was registered on the Principal Register under the Act of 1946 covering the use of the mark on computer software for tax planning, tax preparation and tax filing.  The registration of the mark is valid.

96.     Continuously since on or about November 1, 2000, Intuit has used the mark to identify and promote its TurboTax® software and to distinguish TurboTax® from software made and sold by others, by, among other things, prominently displaying the mark on the TurboTax® software, displays, promotional materials, and advertisements.

51057/1850619.1

97.     Intuit has not consented to Counterclaim Defendants' use of its Marks, nor the use of the Marks by any H&R Block entity.

98.     Counterclaim Defendants have infringed on the Marks in interstate commerce through Counterclaim Defendants' "90,000 Tax Professionals" advertising campaign wherein the Marks are displayed in connection with TaxCut software, a competitor to TurboTax®.

99.     Counterclaim Defendants have used the Marks with the intent to confuse, mislead and deceive consumers and in an attempt to benefit from the goodwill and brand recognition that Intuit has developed, at considerable expense, for its award-winning TurboTax® software.

### First Counterclaim for Relief
### (Common Law Fraud/Fraudulent Misrepresentation)

100.    Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 99.

101.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, in contradiction to the prior statements of the Counterclaim Defendants, Counterclaim Defendants have engaged in fraudulent misrepresentation to the detriment of Intuit.

102.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, on information and belief, H&R Block, Inc. and all Counterclaim Defendants contributed to and ratified these false statements and had knowledge of the falsity of these statements at the time they were made.

103.    On information and belief, Counterclaim Defendants intended the SEC, the investment community, and the public at large to rely and act upon what Plaintiffs now

implicitly concede are inconsistent with statements made in the above referenced SEC filings and Investment Community Conference statement.

104.    Unaware of the possible falsity of Counterclaim Defendants' statements concerning the number of returns, Intuit justifiably relied on them when preparing and airing the advertising campaign challenged by Plaintiffs.

105.    As a result of its justifiable reliance on Counterclaim Defendants' statements made in SEC filings and public documents, Intuit invested time, money, and resources into developing and airing an advertising campaign comparing the relative numbers of returns prepared by Counterclaim Defendants and those prepared using TurboTax®.  If Counterclaim Defendants' statements are in fact false, Intuit has been damaged by at least the amount it expended to develop and purchase its original and subsequently modified advertising campaign.

106.    Assuming Counterclaim Defendants' pre-litigation representations were false, as a result, Intuit has also modified its original advertising campaign that it developed and aired in good faith based upon Counterclaim Defendants' own public filings and statements, resulting proximately and directly in significant unanticipated expenses to Intuit relating to its advertising campaign.  Thus, assuming these statements were false, as Plaintiffs now implicitly allege, in reasonable reliance thereon, Intuit has been damaged at a minimum by the value of the original advertising campaign and any additional expenses Intuit has been required to make to this campaign.

107.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, the above-described acts constitute fraudulent misrepresentation entitling

Intuit to an award of damages against Counterclaim Defendants, as well as the recovery of its costs and attorneys' fees.

108.    Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

109.    The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of punitive damages in an amount sufficient to punish Counterclaim Defendants and deter such conduct in the future.

## Second Counterclaim for Relief
### (Negligent Misrepresentation)

110.    Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 109.

111.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, in contradiction to the prior statements of the Counterclaim Defendants, Counterclaim Defendants, in the course of business and in pursuit of pecuniary interests, have engaged in negligent misrepresentation to the detriment of Intuit.

112.    If Plaintiffs' litigation position regarding the number of returns they prepared is correct, on information and belief, H&R Block, Inc. knew or should have known that it incorrectly represented in its SEC filings and in its "Investment Community Conference" statement that H&R Block stores were responsible for fewer than 19 million returns in each of the previous six tax years.

51057/1850619.1

113.     On information and belief, H&R Block, Inc. and all Counterclaim Defendants contributed to and ratified these statements and knew or should have known the inaccuracy of these statements at the time they were made, if they are in fact inaccurate.

114.     On information and belief, Counterclaim Defendants intentionally provided the information in its January 10, 2006 "Investment Community Conference" statement that H&R Block stores filed 16.0 million "assisted tax returns" in 2005 for the guidance of the investment community and intended the SEC, the investment community and the public at large to rely on and act upon the statements made in the above referenced SEC filings and Investment Community Conference statement.

115.     Intuit was unaware of the potential falsity of these statements and justifiably relied on these filings and statements and the apparent veracity of the numbers of returns filed by Counterclaim Defendants when Intuit developed and aired its advertising campaign that is the subject of this lawsuit.

116.     If Counterclaim Defendants' statements are in fact false, Intuit has been damages by at least the amount it expended to develop and purchase its original and subsequently modified advertising campaign.

117.     If Plaintiffs' litigation position regarding the number of returns they prepared is correct, the above described acts constitute negligent misrepresentation entitling Intuit to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

118.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants. Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

## Third Counterclaim for Relief
### (False Advertising in Violation of Lanham Act § 43(a) Relating to the Number of Returns)

119.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 118.

120.     If Plaintiffs' litigation position regarding the number of returns they prepared is correct, in contradiction to the pre-litigation statements of the Counterclaim Defendants, H&R Block, Inc. represented in SEC filings and in its "Investment Community Conference" statement that H&R Block stores were responsible for fewer than 19 million returns in each of the previous six tax years.

121.     If Plaintiffs' litigation position regarding the number of returns they prepared is correct, on information and belief, H&R Block, Inc. and all Counterclaim Defendants contributed to and ratified these statements and had knowledge of the inaccuracy of these statements at the time they were made.

122.     If Plaintiffs' litigation position regarding the number of returns they prepared is correct, Counterclaim Defendants are engaging in false advertising and unfair business practices by misrepresenting in SEC filings and investment statements the number of returns for which H&R Block stores were responsible in the past six tax years.

123.     As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

124.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

51057/1850619.1

125. The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of treble damages and an award of Counterclaim Defendants' profits, gains and advantages derived from these unlawful acts.

### Fourth Counterclaim for Relief
**(False Advertising in Violation of Lanham Act § 43(a)
Relating to the "90,000 Tax Professionals")**

126. Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 125.

127. H&R Block has engaged in and is currently engaging in a false and misleading advertising campaign involving the "TaxCut" software that is distributed by another H&R Block entity.

128. As part of this campaign, an advertisement falsely states that the TaxCut software is backed by the "support of 90,000 tax professionals," thereby implying that (1) H&R Block employs 90,000 tax professionals and (2) that each of these professionals is trained in the use and support of the TaxCut software and will in fact provide support for the software. On information and belief, the aforementioned assertions are false.

129. On its website, H&R Block, Inc. is presently running a similar advertisement as part of the campaign in which it asserts that the TaxCut software is "the only tax solution backed by 90,000 tax professionals."

130. On information and belief, all Counterclaim Defendants provided authority for the claims made in this campaign.

131.     On information and belief, Counterclaim Defendants' campaign misrepresents the nature, characteristics and qualities of Counterclaim Defendants' goods, services and/or commercial activities.

132.     Intuit has been or is likely to be injured as a result of Counterclaim Defendants' unlawful conduct, either by diversion of sales from Intuit or the loss of goodwill associated with the TurboTax® brand.

133.     The aforementioned acts and practices constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

134.     As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

135.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

136.     The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of treble damages, punitive damages, and an award of Counterclaim Defendants' profits, gains and advantages derived from these unlawful acts.

### Fifth Counterclaim for Relief
**(Unfair Competition and False Advertising in Violation of California Bus. & Prof. Code § 17200 *et. seq.*)**

137.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 136.

138.     Counterclaim Defendants are engaging in unfair competition by promoting their services through false, misleading and deceptive representations of fact in connection with the sale or advertisement of goods and services in trade and commerce in California.

139.     On information and belief, Counterclaim Defendants made the above-described representations and statements knowing at all times that they were false, untrue, and misleading.

140.     Counterclaim Defendants have diverted trade from Intuit and other competitors by falsely representing that the goods and services provided by Counterclaim Defendants have qualities which in fact they do not.

141.     Counterclaim Defendants have violated California Business & Professions Code § 17200 *et seq.* by using false or misleading descriptions and representations of material facts in commercial advertising or promotion in connection with goods in commerce directed to the state of California.

142.     As a result of the aforementioned acts, Intuit is entitled to an award of restitution and disgorgement of all monies wrongfully obtained by Counterclaim Defendants as a result of such unfair competition and business practices.

143.     Intuit has suffered actual damages in the form of lost sales and loss of goodwill as a result of Counterclaim Defendants' unfair competition and business practices.

144.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

51057/1850619.1

## Sixth Counterclaim for Relief
### (Common Law Unfair Competition)

145.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 144.

146.     The aforementioned acts and practices constitute actionable unfair competition under Missouri and California common law.

147.     As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorney fees.

148.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their impermissible actions.

## Seventh Counterclaim for Relief
### (Trademark Infringement in Violation of Section 32(l) of the Lanham Act)

149.     Intuit hereby realleges, as if set forth fully herein, the allegations of its affirmative defenses and of paragraphs 68 through 148.

150.     Counterclaim Defendants have engaged and are engaging in an advertising campaign that infringes on Intuit's legally protected trademarks.

151.     The registrations of Intuits' Marks are valid.

152.     Intuit has not consented to Counterclaim Defendants' use of the Marks, nor the use of the mark by any H&R Block entity.

153.     Counterclaim Defendants have infringed on the Marks in interstate commerce through using them in an advertising campaign wherein they are displayed in connection with TaxCut software, a competitor to TurboTax®.

51057/1850619.1

154.     Upon information and belief, consumers are likely to be misled or deceived by Counterclaim Defendants' use of the Marks.

155.     Upon information and belief, Counterclaim Defendants have used the Marks with the intent to confuse, mislead and deceive consumers and in an attempt to benefit from the goodwill and brand recognition that Intuit has developed, at considerable expense, for its award-winning TurboTax® software.

156.     As a result of the aforementioned acts, Intuit is entitled to an award of damages against Counterclaim Defendants as well as the recovery of its costs and attorneys' fees.

157.     Intuit's remedy at law is not by itself sufficient to compensate Intuit for injuries inflicted and threatened by Counterclaim Defendants.  Intuit is therefore entitled to injunctive relief to prohibit Counterclaim Defendants from continuing their unlawful actions.

158.     The aforementioned acts were performed willfully and intentionally, in bad faith and in conscious disregard of Intuit's rights and the rights of the public, thus entitling Intuit to an award of treble damages and an award of Counterclaim Defendants' profits, gains and advantages derived from these unlawful acts.

## RESERVATION OF RIGHT TO AMEND

159.     Defendant reserves the right to allege other affirmative defenses and/or counterclaims as they become known during the court of discovery, and hereby reserves the right to amend its answer to allege such affirmative defenses and/or counterclaims at a later time.

## PRAYER

WHEREFORE, Defendant prays for judgment as follows:

(a)     That Intuit obtain a judgment in its favor on its counterclaims;

(b)    That the Court enter an injunction against all Counterclaim Defendants permanently enjoining them from publishing, broadcasting or otherwise disseminating false or misleading advertising or engaging in acts which constitute unfair competition;

(c)    For an award of damages resulting from Counterclaim Defendants' fraud and/or negligent misrepresentation;

(d)    For an award of Counterclaim Defendants' profits, gains and advantages derived from their unlawful conduct;

(e)    For disgorgement of Counterclaim Defendants' ill-gotten gains obtained as a result of Counterclaim Defendants' false advertising and unfair competition;

(f)    For an award of treble damages pursuant to 15 U.S.C. § 1117;

(g)    For an award of punitive and exemplary damages to punish Counterclaim Defendants for their willful misconduct and to deter any future willful misconduct;

(h)    For costs of suit and attorney's fees incurred herein; and

(i)    For such other and further relief and the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Intuit respectfully requests a trial by jury.

51057/1850619.1

DATED:  March 22, 2006

By _____ /s/ Claude M. Stern _____

Claude M. Stern (admitted *pro hac vice*)
Margret M. Caruso (admitted *pro hac vice*)
Rachel M. Herrick (admitted *pro hac vice*)
Doug Colt (admitted *pro hac vice*)
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065-2139

-and-

Edward R. Spalty (MO Bar #26086)
Teresa Cauwels (MO Bar #53851)
Armstrong Teasdale LLP
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri  64108-2617

Attorneys for Defendant and Counterclaimant
Intuit Inc.